LEE MANTLE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5808.   Promulgated July 31, 1928.

*Harlow Pease, Esq.*, for the petitioner.
*Granville Borden, Esq.*, for the respondent.

**OPINION.**

LOVE: The only issue in this case is the fair market value at March 1, 1913, of the mineral rights in the Hope Claim as a basis for determining profit on the sale of such rights in 1918.

Petitioner has introduced testimony showing transactions in somewhat similar properties in this section prior to March 1, 1913, in an

effort to show that there existed a market for undeveloped mineral claims at about $5,000 an acre. The transactions introduced ranged from $5,000 to $15,000 an acre. The claims in this section which were in a general class with the Hope Claim had surface outcroppings of veins sometimes strongly marked. In the case of the Hope Claim the vein was exposed at several points and indicated a vein about 15 feet wide. A similar surface showing existed on the Gambrinus Claim.

While there may be some characteristics common to the claim in question and the other claims named in the record, it is apparent to us that a comparison by this Board is impossible, since sufficient information therefor is not contained in the record, and since so many elements enter into a comparison of this nature that it is doubtful if any determination could be reached except by experts on the ground.

Petitioner has further introduced the testimony of several witnesses who were familiar with the property and who had dealt in this class of property, or had knowledge of purchases and sales at or about March 1, 1913. Those witnesses were familiar with the process known as the flotation process, being operated in the Butte vicinity, and it was shown by these witnesses that the introduction of the flotation process as a commercial success stimulated activity in respect to these properties and greatly increased their market value. These witnesses sustained the contention of the petitioner that the value of the property rights in question was at least $100,000 at March 1, 1913.

Respondent has endeavored to discount the testimony of these witnesses in respect to the value of the mineral rights in the Hope Claim, alleging that the ores contained therein consisted of lead, zinc and copper, and maintaining that the presence of copper which would be contained in the concentrates resulting from flotation would make the concentrates of such a character that they could not be commercially treated at that time. We fail to find any evidence in the record as to the character of the ore in the Hope Claim other than that it was referred to as a silver zinc property. There was evidence introduced that the claims lying immediately adjacent to the Hope Claim, known as the Anselmo Group, contained ores bearing zinc and copper, but it was not shown that the Hope Claim was similar. It is also true that testimony shows that copper was predominant in the ores in the central part of Butte but gradually decreased in amount toward the west, and at Missoula Gulch and westward was of minor importance. It has not been shown that the ores in the Hope Claim could not be successfully treated by the flotation system in its state of development at March 1, 1913.

The only evidence relied upon by the Commissioner other than the argument above indicated as to the value of the Hope Claim was its purchase price of $8,250 in 1912. It is alleged that this transaction was at arms-length between a willing buyer and a willing seller, both of whom resided in Butte, and who were in a position to become familiar with the progress of flotation and the market values of claims of this type. While this testimony is pursuasive, in our opinion it has been overcome by the testimony of the witnesses who are undoubtedly qualified to express an opinion of value. The fact that the petitioner entered in his book in 1912 a minimum sale price of $100,000 would also tend to indicate that the petitioner looked upon the purchase price as a distinct bargain and not a figure representing fair market value.

After a review of all the testimony and arguments submitted we are convinced that the mineral rights acquired by the petitioner in the Hope Claim had a fair market value at March 1, 1913, of $100,000, which value should be used as a basis in computing the profits realized during the years in question. There was no question raised as to amount, or time of receipt, of the sale price.

*Judgment will be entered under Rule 50.*